# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LAVELL HOLMAN,

          Plaintiff,

                                          **Civil Action 2:18-cv-448**
                                          **Judge Algenon L. Marbley**
        **v.**                                **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Lavell Holman ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.      BACKGROUND

Plaintiff protectively filed his application for supplemental security income on December 9, 2014, alleging disability since October 21, 2014. (R. at 185-93.) Plaintiff's application was denied initially and upon reconsideration. (R. at 109-122, 123-135.) Plaintiff sought a *de novo*

hearing before an administrative law judge. Administrative Law Judge Jeannine Lesperance (the "ALJ") held a hearing on January 17, 2017, at which Plaintiff, represented by counsel, appeared and testified. (R. at 58-108.) On April 5, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 39-57.) On March 17, 2018, the Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision. (R. at 1-7.) Plaintiff timely filed this action for review. (ECF No. 1.)

Plaintiff advances two errors in his Statement of Errors. Specifically, Plaintiff asserts that remand is required because (1) the Appeals Council improperly failed to consider mental health records submitted after the administrative hearing; and (2) the ALJ failed to properly evaluate the opinions provided by Plaintiff's treating mental health providers. The undersigned limits her discussion to evidence bearing on these contentions of error.

## II. RELEVANT RECORD EVIDENCE

### A. Relevant Mental Health Records

#### 1. Treatment During Incarceration

Plaintiff received mental health treatment during his incarceration, during which time he was diagnosed with paranoid schizophrenia, post-traumatic stress disorder ("PTSD"), and depression. (R. at 740-861.) Plaintiff's symptoms remained consistently well controlled with medication, however, from March 2009 through his release in October 2014. (R. at 749, 750, 754, 813, 814, 823.) For example, on December 5, 2013, Plaintiff reported he was "doing well" on medication and was noted to be stable. (R. at 821.) Similarly, on January 22, 2014, Plaintiff reported he was doing well and credited medication for his lack of disciplinary tickets during his incarceration. (R. at 819.) On April 22, 2014, Plaintiff reported that he "manages well" with

medication.  (*Id.*)  On April 28, 2014, Plaintiff reported that his auditory hallucinations "aren't bad," and that "[h]e sleeps well on medication."  (R. at 816.)  Plaintiff also stated during that visit that he works in laundry but that "he is getting ready to quit" because "it's too boring in the laundry."  (*Id.*)  Plaintiff was reported at that time to be "stable on medications."  (R. at 817.)  On July 22, 2014, Plaintiff reported to Princess Cripe, PsyD, that he quit his laundry job and that he "might relax his last two months" before being released from incarceration.  (R. at 815.) Plaintiff indicated he had "no change in symptoms," and Dr. Cripe reported his condition as "stable."  (*Id.*)  Plaintiff "discussed playing b[asket]ball, horseshoes and other sport activities to keep himself busy which he enjoys."  (*Id.*)

Although the evaluation form is undated, at some point during his incarceration Dr. Cripe performed a prescreen of Plaintiff for disability benefits.  (R. at 740.)  Dr. Cripe indicated that Plaintiff suffers from a severe and persistent mental illness that prevents substantial gainful activity, including schizophrenia.  (R. at 740.)  On July 20, 2014, however, another staff psychologist at Plaintiff's institute of incarceration reported that Plaintiff received a "pre-screen for SSI/SSDI" and that "[b]ased on progress notes, he does not meet criteria" as "he appears to be stable and functioning well in general population."  (R. at 815.)  As such, it was reported that if Plaintiff "is interested in applying [for benefits], he will need to do so after his release."  (*Id.*)

## 2. Psychiatrist Jay Lee, M.D.

Plaintiff saw Dr. Jay Lee of Columbus Area, Inc. on January 6, 2015, at which time Dr. Lee noted that Plaintiff experienced symptoms of psychosis and depression that were "inadequately controlled," and that Plaintiff had suicidal ideations.  (R. at 919.)  Dr. Lee continued various medications to control Plaintiff's symptoms, noting that Plaintiff denied

experiencing side effects from his medications. (R. at 920.)

Plaintiff continued to treat with Dr. Lee and, on March 3, 2015, March 31, 2015, April 28, 2015, and June 23, 2015, Dr. Lee found Plaintiff's symptoms to be well controlled with medication and observed his progress to be stable, and indicated that Plaintiff's judgment, memory, orientation and though process were all normal. Plaintiff denied experiencing side effects from his medication, though he continued to report hearing voices.

On August 18, 2015, Plaintiff reported that he awakens at night worried someone is going to break in. (R. at 909.) Dr. Lee noted Plaintiff's symptoms to be well controlled and that Plaintiff's judgment, memory, orientation and thought process were all normal. Dr. Lee further indicated that Plaintiff's progress was "stable," and that Plaintiff denied experiencing side effects from his medication.

On October 6, 2015, Plaintiff complained of hearing voices "mainly telling me to do bad things." (R. at 907.) Dr. Lee reported at that visit that Plaintiff's symptoms were "inadequately controlled," though he noted Plaintiff's judgment, memory, orientation and though process were all normal and that Plaintiff's overall progress was "stable." (R. at 907.)

On December 1, 2015, Dr. Lee indicated Plaintiff's symptoms were well controlled, and that his judgment, memory, orientation and thought process were all normal. (R. at 905.)

On January 26, 2016, although Plaintiff reported hearing voices at night, Dr. Lee indicated that Plaintiff's symptoms were well controlled and that his judgment, memory, orientation and thought process were all normal. (R. at 903.) Dr. Lee further indicated that Plaintiff's progress was "stable." (R. at 904.)

### 3. Psychologist Earl Greer, EdD

Plaintiff treated with Psychologist Dr. Earl Greer from May 2015 through December 2016. (R. at 893-931.) On May 6, 2015, Dr. Green noted Plaintiff to be cooperative, appropriate, and friendly. (R. at 898.) Plaintiff complained of agoraphobia, mood swings, and lack of trust of others and stated he wakes up at night to check the doors and frequently worries about the future.

The remainder of Dr. Greer's treatment notes consists of brief handwritten descriptions of topics discussed at each visit. For example, on May 13, 2015, Plaintiff stated "this has been a good week." (R. at 899.) On May 27, 2015, Dr. Greer and Plaintiff discussed Plaintiff's "plans for his life." (*Id.*) On July 20, 205, Dr. Greer reported Plaintiff was "basically the same [with] us focusing on his concerns about how others see him and his meds," and that Plaintiff was "aware of the importance of him taking his meds." (*Id.*) On August 18, 2015, Dr. Greer indicated that the pair "looked at [Plaintiff's] dreams and suggested [Plaintiff] watch a comedy before bed." (*Id.*) On September 15, 2015, Dr. Greer noted Plaintiff showed no "signs of violent and especially homicidal behavior," and that Plaintiff would reduce his visits to once per month. (R. at 901.) In October 2015, Plaintiff reported violent dreams, which led Dr. Greer to again recommend watching a comedy before bed. On November 16, 2015, Plaintiff reported that "the meds do help" him, especially with sleep. (*Id.*) In February 2016, Dr. Greer discussed with Plaintiff a "Plan B" to disability benefits in case his application for benefits is denied. In April 2016, Plaintiff reported that he continued to have violent dreams, but Dr. Greer noted Plaintiff had not taken his medication for three days. (*Id.*) Plaintiff continued to report violent dreams through August 2016. (R. at 930.) On September 21, 2016, Dr. Greer indicated that he and

Plaintiff focused on Plaintiff's anger, and that Plaintiff reported fewer violent dreams. On November 23, 2016, Plaintiff reported hearing voices that last "5 minutes," and stated that he "talks them down." (R. at 931.) Dr. Greer noted that the "trigger seems to be he worries about what would happen to him when his mother dies." (R. at 931.) On December 2, 2015, Dr. Greer wrote a letter indicating that Plaintiff undergoes psychotherapy for "depression, anxiety, and especially easy irritation and agitation," which Dr. Greer indicated "are the primary symptoms that prevent him from appropriately functioning and employment." (R. at 893.)

### 4. Gregory S. Johnson, Ph.D.

On January 29, 2015, Dr. Gregory S. Johnson evaluated Plaintiff at the request of the Bureau of Disability Determination. (R. 878-87.) Plaintiff reported that he lives with his mother and that he took public transportation via the bus to get to the assessment. Plaintiff reported that he "hear[s] a lot of voices and [experiences] a lot of premonitions of being killed and things." (R. at 879.) Plaintiff reported that he usually wakes up at 6:00 a.m., at which time he drinks coffee and takes his medication. (R. at 881.) He then returns to his bedroom to listen to the radio until around noon, at which time he will leave his bedroom to talk to his mother. He typically then goes back to his bedroom or runs errands for his mother before ultimately retiring to his room for bed at around 8:00 p.m. Plaintiff reported that his usual activities include watching television and listening to the radio. (R. at 882.)

Dr. Johnson noted Plaintiff to be open and cooperative, logical, and coherent, but to have an anxious mood. Plaintiff denied having thoughts of wanting to hurt others, though he reported having mood swings. Plaintiff reported difficulty with concentration due to racing thoughts. Plaintiff indicated he has a history of hearing voices asking him if he "should do something to

somebody." (R. at 884.) He said he has "premonitions of the dead and what is going to happen to their soul," as well as nightmares. (*Id.*)

Ultimately, Dr. Johnson concluded that Plaintiff "endorsed and evidenced experiences and symptoms consistent with a behavioral health diagnosis of Schizoaffective Disorder, bipolar type." (R. at 885.) Dr. Johnson indicated Plaintiff does not have an elevated risk for dysfunctions in carrying out instructions given to him in the workplace. In addition, Dr. Johnson opined that Plaintiff has "little to no" elevated risk for dysfunctions in maintaining pace and persistence in simple tasks, and a "somewhat elevated" risk for dysfunction in maintaining pace and persistence in multi-step tasks. (R. at 886.) Dr. Johnson also indicated Plaintiff has "little to no" elevated risk for inappropriate responses to expected interactions with coworkers, and a somewhat elevated risk for inappropriate responses to the scrutiny of supervisors. (*Id.*) Finally, Dr. Johnson concluded that Plaintiff "has a somewhat elevated risk for inappropriate responses to expected workplace pressures." (*Id.*)

### 5. Drs. Edwards and Matyi

On February 10, 2015, state-agency reviewer Dr. Joseph Edwards, Ph.D. reviewed Plaintiff's mental health records and concluded that Plaintiff's medically determinable impairments could be expected to produce the alleged symptoms, but that the record evidence did not support the intensity Plaintiff alleged. (R. at 110-122.) Specifically, Dr. Edwards concluded that Plaintiff's symptoms are well controlled with medication. Ultimately, Dr. Edwards opined that although Plaintiff has some limitations in the areas of understanding and memory, concertation and persistence, social interactions, and adaption, Plaintiff is not disabled. On March 19, 2015, state-agency reviewer Sindy Matyi, Ph.D., reviewed Plaintiff's records, and

agreed with the findings of Dr. Edwards.  (R. at 124-135.)

**B.      The ALJ's Decision**

On April 5, 2017, the ALJ issued his decision.  (R. at 39-57.)  At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful

activity since October 21, 2014.  (R. at 44.)  The ALJ found that Plaintiff has the severe

impairments of schizophrenia; schizoaffective disorder; depressive disorder with psychotic

features and borderline intellectual functioning.  (*Id.*)  He further found that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 45.) At step four of

the sequential process, the ALJ set forth Plaintiff's RFC as follows:

After careful consideration of the entire record, the undersigned finds that the

_____

1.  Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1.  Is the claimant engaged in substantial gainful activity?

   2.  Does the claimant suffer from one or more severe impairments?

   3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to perform simple routine repetitive tasks, in a work environment that is not fast-paced or does not have unusual production demands (i.e., goal-based production or work measured by end result, not pace work). In addition, he is limited to jobs with only incidental interaction with the public and only occasional interaction with supervisors and co-workers. He is also limited to a work environment with few, if any, workplace changes and that during times of change would need supervisory support; to jobs requiring simple, work-related decisions and to jobs w[h]ere the work duties are capable of being performed independently without teamwork or tandem work.

(R. at 47.) Relying on testimony from a vocational expert, the ALJ found that Plaintiff is capable of performing past relevant work as a press operator, which does not require the performance of work-related activities precluded by his RFC. (R. at 51.) In addition, the ALJ concluded that there exist other jobs in significant numbers in the national economy that Plaintiff is also able to perform. (R. at 52.) The ALJ therefore concluded that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (R. at 53.)

## C.      Evidence Submitted to Appeals Council

On April 19, 2017, Plaintiff appealed the ALJ's decision. (R. at 180-182.) Roughly eight months later, in January 2018, Plaintiff submitted records from Columbus Area, Inc., the facility at which Dr. Lee practices, to the Appeals Council. (R. at 14-30.) The records included treatment notes from providers other than Dr. Lee dated January 6, 2017, through December 6, 2017, as well as a January 12, 2018, medical source statement from Tarsicio Gacheru, D.N.P. of Columbus Area, Inc. The Appeals Council determined that "[t]his additional evidence does not relate to the period at issue," and therefore "it does not affect the decision about whether you were disabled beginning on or before April 5, 2017," the date of the ALJ's decision. (R. at 2.)

The treatment notes submitted to the Appeals Council reflect that on January 6, 2017,

Plaintiff complained of nightmares, but his symptoms were otherwise reported to be "well controlled." (R. at 27.) Plaintiff denied experiencing side effects from his medications. (R. at 28.) On April 13, 2017, Plaintiff reported "ongoing paranoia," including repeatedly checking the locks on his apartment doors "because he lives in a bad neighborhood." (R. at 29.) Plaintiff reported that he "desire[d] no change to meds" during that visit. (*Id.*) On August 31, 2017, Plaintiff reported symptoms of paranoia, including hearing voices that wake him up at night. (R. at 25.) Plaintiff denied experiencing side effects from the medication. (R. at 26.) On September 28, 2017, Plaintiff arrived for medication management and follow up, at which time he reported hearing voices "that are telling him to kill people." (R. at 23.) By October 26, 2017, Plaintiff's progress was reportedly "stable," with Nurse Gacheru reporting that he "is well controlled with prescribed medications," that his judgment, memory, and thought process were normal, and that he was oriented to person, place, time, and situation. (R. at 21-22.) On December 6, 2017, Nurse Gacheru indicated Plaintiff "is stable on the current medication," and that he "denies insomnia or anxiety." (R. at 19.) Nurse Gacheru completed a medical source statement dated January 12, 2018, in which she indicated Plaintiff experiences moderate or marked impairments in various areas of social interaction and concentration and persistence. (R. at 14-16.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.   ANALYSIS

Plaintiff maintains remand is proper because (1) the Appeals Council improperly failed to consider the treatment records he submitted after the ALJ's decision; and (2) the ALJ failed to properly evaluate the opinions of Plaintiff's treating physicians. The undersigned finds these contentions of error to be without merit for the reasons set forth below.

## A.    Sentence Six Remand

Plaintiff first contends that remand is proper because the Appeals Council erroneously declined to consider Plaintiff's treatment records submitted after the administrative hearing. The Appeals Council determined that the newly-submitted evidence, almost all of which post-dates the ALJ's April 5, 2017 decision, "does not relate to the period at issue" and thus "does not affect the decision about whether you were disabled beginning on or before April 5, 2017." (R. at 2.) Plaintiff asserts that the records do relate to the period prior to the ALJ's decision, and also that they are new and material and warrant remand. In effect, Plaintiff seeks a remand under sentence six of 42 U.S.C. § 405(g).

Sentence six of 42 U.S.C. § 405(g) provides:

> The Court may…remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…

42. U.S.C. § 405(g). The Sixth Circuit further defined the requirements that elements be "new," "material," and that the plaintiff show "good cause" as follows:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' ... Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' ... A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.... [T]he burden of showing that a remand is appropriate is on the claimant.

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). "Sentence-six remands may be ordered in only two

situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted).

Here, Plaintiff has failed to meet his burden of establishing that remand is warranted. First, at least some of the newly-submitted records are not new for purposes of the sentence-six analysis, including the January 6, 2017, treatment note, which pre-dates the ALJ's decision, and the opinions expressed in Nurse Gacheru's January 12, 2018 medical source statement. In fact, as for her medical source statement, Plaintiff insists Nurse "Gacheru expressly stated that the opinions [s]he provided existed since October 21, 2014" (SOE 14, ECF No. 10), yet he failed to offer any evidence or argument that the opinions were nevertheless unavailable to him prior to the ALJ's decision.

Second, the newly-submitted records are not material. Evidence is not "material for purposes of Sentence Six [unless] it is time-relevant, i.e., either it relates to the period on or before the date the ALJ rendered his decision." *Swartz v. Astrue*, No. 1:10-cv-605, 2011 WL 4571877, *10 (S.D. Ohio Aug. 18, 2011). Aside from the January 6, 2017 treatment note indicating Plaintiff's symptoms were "well controlled" and Nurse Gacheru's January 12, 2018 medical source statement, the newly-submitted treatment records pertain to the period after the ALJ issued his decision and, as a result, are not material. The records do not indicate that they relate to the period before the ALJ's decision, but rather consist of notes of Plaintiff's continued progress after the decision. Nor are the records material if Plaintiff's position is that they demonstrate his condition deteriorated after the ALJ issued his decision. *See Flores v. Berryhill*, No. 1:17-cv-406, 2017 WL 6882551, at *23 (N.D. Ohio Dec. 15, 2017) ("Evidence is not

13

material if it is cumulative of evidence already in the record, or if it merely shows a worsening condition after the administrative hearing.") (citing *Jones v. Comm'r of Soc. Sec.*, 336 F. 3d 469, 478 (6th Cir. 2003)); *see also Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 712 (6th Cir. 1988) ("Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition."). If that is his position, Plaintiff's remedy would be to file a new application for disability benefits. *See Sizemore*, 865 F.2d at 712; *see also* 20 C.F.R. § 416.330(b) (providing that the remedy for a claimant who meets the requirements for disability only after the period in which his application was in effect is to "file a new application for benefits").

Similar to the treatment notes that post-date the ALJ's decision, Nurse Gacheru's January 12, 2018 medical source statement is likewise not material. Although Nurse Gacheru indicated that the conditions she described in the form existed since October 21, 2014, (R. at 16), the accompanying records contain just two treatment notes from Nurse Gacheru dated October 26, 2017, and December 6, 2017. (R. at 19-22.) During both visits, Nurse Gacheru reported Plaintiff's symptoms to be well controlled and his progress to be stable, with normal thought process, judgment, and orientation. (*Id.*) Particularly given the lack of support in her own treatment notes, the undersigned finds that Nurse Gacheru's conclusory assertions in the medical source statement are not "material," in addition to not being "new."

Finally, Plaintiff has failed to even attempt to establish good cause for his failure to submit at least the January 6, 2017 treatment note and the opinions expressed by Nurse Gacheru on January 12, 2018, prior to the ALJ's decision. For this and the reasons set forth above, sentence-six remand is inappropriate. As such, the undersigned **RECOMMENDS** that

Plaintiff's first contention of error be **OVERRULED**.

**B.      Evaluation of Plaintiff's Treating Physicians**

Plaintiff next contends that the ALJ erred in evaluating the opinions of his treating sources.  The undersigned disagrees.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  Where a treating source's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2);  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination

or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d)(1). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s),"

opinions on issues reserved to the Commissioner are generally not entitled to special

significance.  20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ explained that he afforded the opinions of Dr. Lee and Dr. Greer, which

were provided on check-box "medical source statement" forms, "little weight" because they

were unsupported by the respective doctors' treatment notes and the remainder of the record.

Specifically, the ALJ discussed these opinions as follows:

> The claimant's psychiatrist, Jay Lee MD, completed a checkbox form providing the
> claimant would have "*marked*" or "*extreme*" limits in a significant number of work-
> related mental abilities (Exhibit 4F).  The undersigned takes notice that this form is
> not an agency approved form and redefines the terms in such a way that any
> response other than "none" is likely work preclusive.  Moreover, Dr. Lee checked
> the box that the claimant would likely have unscheduled absences due to his
> impairment or medications side effects and would likely deteriorate if placed under
> stress, such as from a regular work day.  The only justification for these extreme
> limits are that the claimant "*said he was fired from a job 6-7 years ago.*"  While the
> undersigned accepts Dr. Lee as a treating source, it is noted that Dr. Lee only had
> contact with the claimant for approximately two hours and 20 minutes over the
> course of the year after which he provided such extreme limits.  Moreover, within
> his notes from that period, the level of severity is not even remotely supported (see
> Exhibit 7F).  Within the notes for the medication management appointments, the
> claimant's mental status examinations and overall presentation has not been
> documented to be supportive of such extreme limitations.  Therefore, the
> undersigned gives Dr. Lee's opinion little weight.

> Earl Greer, EdD, the claimant's psychologist, completed a checkbox form
> providing the claimant would have primarily "*marked*" limits in a significant
> number of work-related mental abilities (Exhibit 5F).  The undersigned takes notice
> that this form is not an agency approved form and redefines the terms in such a way
> that any response other than "none" is likely work preclusive.  Moreover, Dr. Greer
> checked the box that the claimant would likely have unscheduled absences due to
> his impairment or medications side effects and would likely deteriorate if placed
> under stress, such as from a regular workday.  The only justification for these
> extreme limits are that the claimant is "*Emotionally unstable.*"  However, Dr.
> Greer's treatment notes are not supportive of such limitations, as they provide a
> brief synopsis of what was discussed during the encounter; however, there are no
> objective findings or mental status examinations included to show any baseline,
> change in functioning or response to treatment.

The undersigned finds no error in the ALJ's consideration and weighing of the opinions of Dr. Lee and Dr. Greer. Although Plaintiff challenges the ALJ's discounting of the opinions because they were provided on check-box forms, "[n]umerous decisions have found that the use of checklist or check-the-box forms that contain little to no accompanying explanation for the assessed limitations—even when utilized by a treating physician or acceptable medical source—are unsupported opinions . . . ." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, *13 (N.D. Ohio June 4, 2018) (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) ("Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on those grounds.")); *Hernandez v. Comm'r of Soc. Sec.*, No. 15-1875, 2016 WL 1055828 at *4 (6th Cir. Mar. 17, 2016) (ALJ's erroneous consideration of treating physician's check-box analysis was harmless error where the form was unaccompanied by any explanation and was "weak evidence at best" that "meets our patently deficient standard"); *Denham v. Comm'r of Soc. Sec.*, No. 2:15-cv-2425, 2016 WL 3639894, at *8 (S.D. Ohio July 8, 2016) ("To the extent the form at issue is construed to reflect an opinion by N.P. Lewis that Plaintiff was unable to function up to 25% of the workday or workweek in nearly every work-related activity, the ALJ's failure to assign the opinion weight is harmless because the opinion is so patently deficient that the Commissioner could not possibly credit it." (internal quotation marks and citation omitted)); *Langlois v. Colvin*, No. 3:15-cv-01628, 2016 WL 1752853, at *8 (N.D. Ohio May 3, 2016) (finding the ALJ did not err by rejecting a treating source's unexplained checklist opinion); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) ("[C]hecklist forms . . . which require only that the completing physician check a box or fill in a blank, rather than provide a substantive basis for the conclusions stated, are considered weak

evidence at best in the context of a disability analysis.") (internal quotation marks and citation omitted).

Here, as the ALJ recognized, the medical source statement opinions submitted by Dr. Lee and Dr. Greer consist primarily of check marks assigned to various categories of limitations set forth on a form. (R. at 894-896, 889-891.) In view of the unusual definitions of "mild," "moderate," and "extreme" provided on the check-box forms at issue, Dr. Greer checked boxes reflecting that Plaintiff is unable to function up to 25% (or more) of the workday or work week in nearly every work-related activity, and Dr. Lee checked boxes reflecting that Plaintiff is unable to function up to 50% (or more) of the work day or work week in nearly every work-related activity. Although the forms contain a handful of areas prompting the provider to include explanation, Drs. Lee and Greer declined to provide additional explanation for all but one of their conclusions.

Moreover, the undersigned finds no error in the ALJ's conclusion that Dr. Lee's and Dr. Greer's opinions are inconsistent with or unsupported by their treatment notes. Dr. Lee indicated Plaintiff is unable to withstand the stress of a normal work day because Plaintiff "was fired from a job @ 6-7 years ago." (R. at 891.) The fact that Plaintiff was terminated from a job for unspecified reasons years ago, however, does not support the conclusion that Plaintiff is unable to withstand the stress of a normal workday. Moreover, each time he met with Plaintiff, Dr. Lee reported Plaintiff's progress as "stable." (R. at 4, 6, 8, 10, 12, 14, 16, 18 and 20.) Dr. Lee also reported Plaintiff's symptoms were "well controlled" at nearly every visit. (R. at 903, 905, 909, 911, 913, 915 and 917.) In addition, despite intermittent complaints of auditory hallucinations or paranoid thoughts, Dr. Lee indicated that Plaintiff's thought process, judgment, and orientation

were normal during every visit, and reported that Plaintiff denied experiencing side effects from his medications. (R. at 903-920.) Under these circumstances, the ALJ did not err in concluding Dr. Lee's medical source statement was "not even remotely supported" by his treatment notes. (R. at 49.)

The ALJ also correctly determined that the conclusions contained in Dr. Greer's form were unsupported. The only justification Dr. Greer provided for the conclusion that Plaintiff was unable to withstand the stress of a normal workday was that Plaintiff is "emotionally unstable." (R. at 896.) Dr. Greer declined to provide additional explanation on the form, despite being provided with space and prompts to do so. (R. at 894-896.) Although his treatment notes contain a brief summary of each encounter with Plaintiff, "there are no objective findings or mental status examinations included to show any baseline, change in functioning, or response in treatment," as the ALJ recognized. (R. at 50.) The Sixth Circuit has held that an ALJ may properly assign little weight to opinions from treating sources "where the physician provided no explanation for the restrictions . . . and cited no supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016); *see also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("The ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."); *Price v. Comm'r Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding [claimant's] impairments, the ALJ did not err in discounting his opinion.") *cf. Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, [the claimant's] treating physician, was not entitled to deference

because it was based on [the claimant's] subjective complaints, rather than objective medical data.").

Furthermore, the undersigned is unpersuaded by Plaintiff's contention that the record as a whole supports the opinions of Dr. Lee and Dr. Greer, and thus demonstrates error by the ALJ. As set forth above, Dr. Lee's and Dr. Greer's own treatment notes fail to support their opinions. Plaintiff also points to Dr. Cripe's pre-screen assessment concluding that Plaintiff is unable to engage in substantial gainful activity. (SOE 10, ECF No. 10, citing R. at 740-743.) The determination as to whether a claimant is disabled, however, is reserved to the Commissioner. *See Smead v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 653, 661 (S.D. Ohio 2013) ("'Whether an individual is 'disabled' under the Act . . . is reserved to the Commissioner.'") (quoting SSR 96-5p). Moreover, the ALJ correctly pointed out that Dr. Cripe's assessment is contradicted by Plaintiff's treatment records, which demonstrate that Plaintiff was consistently stable with well controlled symptoms from 2009 through his October 2014 release from incarceration. (R. at 749, 750, 754, 813, 814, 823). Indeed, as the ALJ emphasized, Plaintiff "was able to have at least two jobs while incarcerated" and "was able to be maintained in general population without any [disciplinary] 'tickets.'" (R. at 49.) In addition, a second pre-screen performed during Plaintiff's incarceration indicated he "does not meet the criteria" for benefits because "he appears to be stable and functioning well in general population." (R. at 815.) Finally, despite Plaintiff's contrary assertion, Nurse Gacheru's January 12, 2018 medical source statement fails to demonstrate that the ALJ erred in weighing the opinions of Dr. Lee and Dr. Greer, particularly because that opinion was never presented to the ALJ. *Osburn v. Apfel*, 182 F.3d 918, table (6th Cir. 1999) ("[F]ederal courts reviewing claims for social security benefits may not reverse an

administrative law judge's decision on the basis of evidence first submitted to the Appeals Council.").

Finally, the evidence otherwise cited by the ALJ constitutes substantial evidence supporting not just his determinations regarding the opinions of Dr. Lee and Dr. Greer, but also his ultimate conclusion that Plaintiff was not disabled. The ALJ thoroughly analyzed the record evidence and concluded that although Plaintiff "has intermittent report[s] of paranoia and hallucinations . . . the rest of his mental status examinations are fairly unremarkable with the claimant having normal thought processes and unimpaired judgment and memory, as well as being oriented." (R. at 48.) Even if the evidence could have supported a finding of disability, as Plaintiff maintains, "the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-CV-01078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). For all of these reasons, the undersigned **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

## V.    CONCLUSION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM**

the Commissioner of Social Security's decision.

## VI.    PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE