IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAVELL HOLMAN, :
:  Case No. 2:18-cv-448
    **Plaintiff,** :
: JUDGE ALGENON L. MARBLEY
v. :
: Magistrate Judge Vascura
COMMISSIONER OF :
SOCIAL SECURITY, :
:
    **Defendant.** :

## **OPINION & ORDER**

This matter comes before the Court on the Magistrate Judge's February 20, 2019 **Report and Recommendation** (ECF No. 15), which recommended that Plaintiff's Statement of Errors (ECF No. 10) be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**. This Court hereby **ADOPTS** the Report and Recommendation in its entirety based on an independent consideration of the analysis therein.

## I.    BACKGROUND

Plaintiff applied for supplemental security income on December 9, 2014, alleging disability since October 21, 2014. (ECF No. 15 at 1). Plaintiff's application was denied at first and again when reconsidered. (*Id.*). After the second denial, Plaintiff sought *de novo* review from an Administrative Law Judge ("ALJ"). (*Id.*). The ALJ held a hearing on January 17, 2017 and then, in an April 5, 2017 decision, found Plaintiff not to be disabled under the Social Security Act. (*Id.*). In his decision denying Plaintiff benefits, the ALJ followed the required five-step sequential analysis for disability-benefits claims. (*Id.* at 8); *See* C.F.R. § 416.920(a).[1] Plaintiff

---

[1] Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the five sequential steps are as follows:

1

requested the Appeals Council to review this decision but it denied the request and affirmed the ALJ's decision on March 17, 2018. (*Id.*). On October 24, 2018, Plaintiff filed his Statement of Specific Errors with this Court, seeking to have his case remanded. (ECF No. 10). The Magistrate Judge issued a Report and Recommendation regarding Plaintiff's alleged errors on February 20, 2019 and recommended that this Court overrule the Statement of Specific Errors and affirm the ALJ's decision. (ECF No. 15).

Plaintiff timely filed his Objection to the Report and Recommendation on March 6, 2019. (ECF No. 16). He raises two objections. First, that the ALJ did not properly evaluate the opinions of the treating source doctors; and second, that the appeals council did not properly consider the medical source statement provided to them. (*Id.*).

While incarcerated, Plaintiff was subject to a pre-screen assessment by Dr. Princess Cripe, a psychiatrist, who concluded that he was "unable to engage in substantial gainful

---

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

activity." (ECF No. 15 at 21). However, Plaintiff's treatment records in prison indicate that Plaintiff remained stable and controlled his symptoms. (*Id.*). He had two jobs in prison and did not have any disciplinary issues while in general population. (*Id.*). Also, he underwent a second pre-screen that found him ineligible for benefits because he was doing well in general population. (*Id.*).

Plaintiff began meeting with Dr. Jay Lee, a psychiatrist, on January 6, 2015 and regularly met with him for about a year. (ECF No. 15 at 3-4). Initially, Dr. Lee noted that the symptoms of Plaintiff's depression were not properly controlled and that Plaintiff had some suicidal thoughts. (*Id.* at 3). However, in subsequent visits, Dr. Lee almost always described Plaintiff's progress as "stable," found his judgment, memory, orientation, and thought process to be normal, and remarked that his symptoms were under control when he was on medication. (*Id.* at 4). At the end of his evaluation of Plaintiff, Dr. Lee marked a box on the form that indicated that he thought Plaintiff could not properly function up to half of the time for any given workday or workweek in most work-related activities and also remarked that the Plaintiff could not work because he had been fired from a job six or seven years prior. (*Id.* at 19).

Dr. Earl Greer, a psychologist, treated Plaintiff between May 2015 and December 2016. (*Id.* at 5). Dr. Greer found Plaintiff to be agoraphobic and paranoid and Plaintiff frequently discussed his violent dreams and inner voices encouraging him to commit violent acts with Dr. Greer. (*Id.* at 5-6). In a December 2, 2015 letter, Dr. Greer wrote that Plaintiff's depression, anxiety, and easy irritation would prevent him from being able to function in a workplace. (*Id.* at 6). In a checkbox form, Dr. Greer indicated that Plaintiff would be markedly limited in his work-related mental functions and that he would be unable to function up to a quarter of the time he

would be working. (*Id.* at 17, 19). Dr. Greer justified this opinion only by saying that Plaintiff was "emotionally unstable." (*Id.* at 19).

Plaintiff submitted as new evidence to the Appeals Council a medical source statement from Dr. Tarcisio Gacheru,D.N.P. dated January 12, 2018. (*Id.* at 9). This statement posited that Plaintiff was moderately or markedly impaired in his social interaction, concentration, and persistence. (*Id.* at 10). Though the document is dated2018, Dr. Gacheru claims that the opinions it contains date back to 2014. (*Id.* at 13). The Appeals Council rejected the statement as immaterial, not convincing them that the ALJ was wrong. (*Id*. at 12).

## II.     STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b).  This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013).  Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted).  Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)).

### III. LAW AND ANALYSIS

#### A. Treating Source Doctors' Opinions

Plaintiff objects to the Magistrate Judge's finding that the ALJ properly evaluated the opinions of the treating source doctors, Dr. Lee and Dr. Greer. (ECF No. 16 at 2). A treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and…not inconsistent with the other substantial evidence in [the claimant's] case record" for the ALJ to give it controlling weight. *See* 20 C.F.R. § 4196.927(c)(2); *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 408 (6th Cir. 2009). If the ALJ does not give the treating physician's opinion controlling weight, then the ALJ determines the opinion's weight by evaluating "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Also, the ALJ must provide good, specific reasoning for the weight that they give the treating doctor's opinion. *See* 20 C.F.R. § 416.927(c)(2); *Friend v. Comm'r of Soc. Sec.* 375 F. App'x 543, 550 (6th Cir. 2010).

Plaintiff argues that all that matters in evaluating the opinion of a treating doctor is whether the record supports the opinion and that in this case, the record supports the treating doctors' opinions. (ECF No. 16 at 2). Further, Plaintiff asserts that the Magistrate Judge erred by finding that the treating doctors' opinion was entitled to less weight because they used check-down forms because the form used should not have been of consequence, only whether the opinion matched the record. (*Id.*). Also, Plaintiff objects to the Magistrate Judge's interpretation of Plaintiff's incarceration records as not supporting the treating doctors' opinions, arguing that

the Magistrate Judge ignored how structured prison life was and that it was not a good comparison for the workplace. (*Id.* at 2-3).

The Magistrate Judge found that courts had frequently held the use of check-down forms with little or no accompanying explanations for selections by treating physicians to be unsupported opinions, and thus deserving of less weight than other, more-supported opinions. (ECF No. 15 at 18). Here, Drs. Lee and Greer did not provide any additional information for most of their conclusions on the forms. (*Id.* at 19). Outside of the forms, Dr. Lee claimed that Plaintiff would be unable to work because he had been fired from a job six or seven years prior and Dr. Greer cited emotional instability for Plaintiff's inability to work. (*Id.*). Both of these explanations were unsupported. (*Id.*). The Sixth Circuit has explained that an ALJ may assign little weight to treating doctors' opinions when those opinions contain little or no objective medical evidence. (*Id.* at 20) (quoting *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016)). Thus, the Magistrate Judge did not err by affirming the ALJ's decision not to award much weight to the treating doctors' opinions because they used a drop-down box.

The Magistrate Judge also found that the record was often inconsistent with the treating doctors' opinions. At each of his meetings with Plaintiff, Dr. Lee described Plaintiff as "stable" and remarked that his symptoms were "well controlled." (*Id.* at 19). Dr. Lee also found Plaintiff's thought process, judgment, and orientation to be normal and Plaintiff never reported any side effects of the medication to Dr. Lee. (*Id.*). These observations do not line up with Dr. Lee's opinion that Plaintiff would be severely limited in his functionality at work and would thus be unable to work. (*Id.*). Dr. Greer's treatment notes merely contain summaries of his visits with the Plaintiff and there is no objective medical evidence to support the claim that Plaintiff is emotionally unstable or unable to work. (*Id.* at 20). Thus, the Magistrate Judge did not err by

6

affirming the ALJ's devaluation of the treating source doctors' opinions for their inconsistency with the record.

When affirming the ALJ's decision not to give the pre-screen from Dr. Cripe much weight, the Magistrate Judge was not wrong to use Plaintiff's functioning in prison as evidence of his competence and lack of a disability. The prison treatment records directly contradicted Dr. Cripe's conclusion because they showed that Plaintiff was able to work multiple jobs and function well. (*Id.* at 21). It was also not unreasonable to conclude that, if Plaintiff was able to handle the pressures and stressors of being incarcerated, Plaintiff could also function in workplace after his release. The Magistrate Judge did not err by making this comparison and did not err in her treatment of the treating doctors' opinions.

### B. Dr. Gacheru's Medical Source Statement

Plaintiff objects to the Magistrate Judge's finding that the Medical Source Statement created by Dr. Gacheru that Plaintiff submitted to the Appeals Council was neither "new" nor "material," as is required for a remand to an ALJ (ECF No. 16 at 3-4). "New" evidence includes only evidence that did not exist or was not available to the claimant at the time of the hearing. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). For evidence to be "material," it must create a reasonable probability that the ALJ would have reached a different outcome on the disability claim if they had seen this evidence. *Id.*

Here, in arguing that the medical source statement is "new," Plaintiff only discusses the existence requirement and not the availability requirement. (ECF No. 16 at 4). Plaintiff argues that the medical source statement is new because it was not created until after the ALJ's decision. (*Id.*). However, the Magistrate Judge rightly pointed out that Dr. Gacheru admitted that

7

the opinions in the statement had existed since 2014 and that Plaintiff had provided no evidence that these opinions were unavailable to him at the time of the hearing, so it could not be "new." (ECF No. 15 at 13). This Court sees no reason to disturb the Magistrate Judge's finding.

Plaintiff argues that the statement was material because the record supported Dr. Gacheru's opinion and thus the ALJ would have found differently if they had seen the statement. (ECF No. 16 at 4). However, the opinion was not even consistent with Dr. Gacheru's notes from visits with Plaintiff, which indicated that Plaintiff was stable, that his symptoms were under control, and that his thought process, judgment, and orientation were normal. (ECF No. 15 at 14). Also, the conclusions in the statement were conclusory and not supported by evidence. (*Id.*). The statement was not supported by the record and thus would have been unlikely to change the ALJ's mind.

The Magistrate Judge did not err in affirming the Appeals Council's decision not to remand the case based on the medical source statement, as it was neither "new" nor "material."

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**. The Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation.

**IT IS SO ORDERED.**

        s/ Algenon L. Marbley
        **ALGENON L. MARBLEY**
        **UNITED STATES DISTRICT JUDGE**

**DATED: June 6, 2019**